Filed 10/16/24  In re D.A. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re D.A., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.A.,<br><br>Defendant and Appellant. | E083669<br><br>(Super.Ct.No. J296065)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel and Landon Villavaso, Deputy County Counsel for Plaintiff and Respondent.

1

The sole issue in this appeal following the termination of parental rights is whether the social services agency fulfilled its duty of initial inquiry under ICWA (25 U.S.C. § 1901 et seq.; ICWA). We find it did, reject the father's claim to the contrary, and affirm.[1]

## I. BACKGROUND

In February 2023, plaintiff and respondent San Bernardino County Children and Family Services (CFS) filed a dependency petition for D.A. The petition alleged both parents had criminal and substance abuse histories and the whereabouts of both parents were unknown. D.A., born just days earlier, had remained in the hospital, and CFS obtained a detention warrant. At the initial hearing, which both parents attended, the juvenile court ordered D.A. removed from the parents. The following month, the juvenile court declared D.A. a dependent of the court, and in April 2024 it terminated both parents' parental rights to D.A. In doing so, the court found that ICWA did not apply.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code, and undesignated rule references are to the California Rules of Court. Additionally, "[t]he language of both federal and state law uses the term 'Indian,'" but "California courts have used alternative terms, such as 'American Indian' or 'Native American'; we use the term 'Indian' throughout to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).)

*A. Father's ICWA Inquiry*

On forms filed the same day as the initial hearing, defendant and appellant E.A. (father) indicated that one of his family members was a member of the Chumash tribe.[2] At the initial hearing, father stated: "I think my uncle belongs to the Chuma[sh] . . . tribe."

CFS's subsequent jurisdiction/disposition report stated that father denied having Indian ancestry. Father "reported that his uncle is part of the Chuma[sh] Tribe by marriage, and not through blood relation. The father denied attending tribal schools, living on reservations, or having tribal association. The father denied any additional family members" having Indian ancestry.

Because father had indicated on a form that one of his family members was a member of the Chumash tribe, CFS contacted the Santa Ynez Band of Chumash Indians despite father's subsequent denial of Indian ancestry. A CFS social worker emailed the tribe, which responded by stating: "Family is NOT a member of Santa Ynez Band of Chumash Indians."

CFS's section 366.26 report, filed in February 2024, stated that D.A.'s paternal uncle denied knowledge of Indian ancestry. Interviewing father again, CFS reported that father "believes his family only has Mexican Native Ancestry" and that a paternal aunt "would most likely know more about it."

---

[2] The record and the appellate briefs variously refer to the tribe as "Chuma," "Chumas," and "Chumash."

*B. Mother's ICWA Inquiry*

At the initial hearing, when asked about whether she had Indian ancestry, A.G. (mother) responded: "I'm not sure – I'm unsure. It's on my grandfather's side." On forms filed that day, mother indicated she did not know whether any of her family members were members of a federally recognized Indian tribe.

In its jurisdiction/disposition report, CFS stated mother remained "unsure" about having Indian ancestry and stated that her father, D.A.'s maternal grandfather, might have additional information. D.A.'s maternal grandfather was interviewed a few days later and denied having Indian ancestry. In a later interview, he reiterated his denial about having Indian ancestry and clarified that there was no Indian ancestry on D.A.'s maternal grandmother's side either.

## II. DISCUSSION

ICWA establishes minimum standards "for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." (25 U.S.C. § 1902.) California's counterpart to ICWA (§ 224 et seq.; Cal-ICWA) imposes on juvenile courts and county welfare departments "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*Ibid.*) Only the initial duty is at issue in this appeal.

4

Father's opening brief contends that "the juvenile court and the child welfare agency failed to discharge its statutory duty of initial inquiry." CFS's brief implicitly argues only the duty of further inquiry is at issue, as it argues only that it "conducted an adequate further inquiry of Indian ancestry." Instead of accepting CFS's implied invitation to treat this issue as one of further inquiry, we address father's argument as he has framed it. He argues an adequate initial inquiry might have revealed additional potential tribes (beyond the Chumash tribe) to contact as part of CFS's further inquiry.

The initial duty applies in every dependency. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686; see § 224.2, subd. (b).) The initial duty expands under section 224.2, subdivision (b), when a child is removed from their home. Under that provision, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306," the department's obligation includes asking the "extended family members" about the child's Indian status. (§ 224.2, subd. (b).) The Judicial Council revised rule 5.481 to implement section 224.2, subdivision (b), by requiring inquiry of extended family in every case in which the department seeks to place the child. (Rule 5.481(a)(1).)

Our Supreme Court recently held "that error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3. When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain

5

whether the agency's error is prejudicial." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1136 (*Dezi C.*).) Although the Court did "not have occasion to decide what constitutes an adequate and proper inquiry necessary to satisfy section 224.2," it noted that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) "'"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."'" (*Ibid.*) Failures "to obtain meaningful information or pursue meaningful avenues of inquiry—by, for example, . . . failing to inquire further after a parent identified an extended family member with more information about the child's potential Indian ancestry" are relevant in assessing the adequacy of initial Cal-ICWA inquiry. (*Id.* at p. 1151.)

Here, we are not reviewing a trial court's resolution of an evidentiary conflict, but the trial court's implied finding that the department's "inquiry and due diligence were 'proper and adequate.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) We thus are "not concerned with the outcome" as to the likelihood of whether the child is an Indian child. (*Id.* at p. 1144.) We do not limit our review to "[e]nforcing the requirement of an adequate inquiry only in cases in which the record affirmatively demonstrates a reason to believe the child is an Indian child." (*Id.* at p. 1147.) Instead, we must "ensur[e] that tribal heritage is acknowledged and inquired about in dependency cases." (*Id.* at p.

6

1148.)  This requires us to engage in a searching review to protect the tribal interests that *Dezi C*. explained are compelling and legally protected.  (*Ibid*.)  Yet the deferential standard means an inquiry need not be perfect to be adequate.

We find no error in the juvenile court's determination that CFS's initial inquiry was adequate, which is implied in its conclusion that ICWA did not apply.  Father contends that CFS's initial inquiry was inadequate because it did not contact D.A.'s paternal aunt, maternal aunt, and maternal uncle.  In light of repeated denials by father of Indian ancestry, a denial by a paternal uncle of the same, and an acknowledgment that an earlier claim of Indian ancestry was based on D.A.'s great-uncle's association through marriage, CFS did not need to search for and ask the paternal aunt about Indian ancestry.  Although father identified the paternal aunt as someone who might have additional information, in the context of CFS's section 366.26 report where the identification was made, the additional information father identified the paternal aunt as having is more properly seen as information about "Mexican Native Ancestry," not D.A.'s potential Indian ancestry.

Similarly, CFS did not need to interview D.A.'s maternal aunt and uncle about potential Indian ancestry in light of the maternal grandfather's repeated denials.  The maternal aunt and uncle, which CFS mentioned in a September 2023 status review report as family members interested in having visits with D.A., do not appear to have been asked about Indian ancestry.  We are satisfied nevertheless that CFS conducted an initial inquiry "adequate to reach a reliable conclusion about the applicability of ICWA."  (*Dezi*

7

*C.*, *supra*, 16 Cal.5th at p. 1153 (conc. opn. of Kruger, J.); accord, *id.* at p. 1169 (dis. opn. of Groban, J.) ["'the focus of the court's analysis should not be on the number of individuals interviewed, but on whether the agency's [Cal-ICWA] inquiry has yielded reliable information about a child's possible tribal affiliation'"].)  Father has identified no reason to think the maternal aunt and uncle might have information the maternal grandfather, who expressly and repeatedly denied Indian ancestry, did not.  Accordingly, we find no error in the juvenile court's determination that ICWA did not apply.

### III.  DISPOSITION

The orders terminating parental rights to D.A. are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

RAMIREZ

P. J.

MILLER

J.